Michelle R. Ghidotti-Gonsalves, Esq. (SBN 27180)
GHIDOTTI | BERGER LLP
1920 Old Tustin Ave.
Santa Ana, CA 92705
Tel: (949) 427-2010
Fax: (949) 427-2732
mghidotti@ghidottiberger.com

Attorneys for Creditor
U.S. Bank Trust National Association as Trustee of the Cabana Series IV Trust

## IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA – TUCSON DIVISION

| | |
|---|---|
| In re:<br><br>JAY D SEXTON, RUBY L SEXTON<br><br>         Debtor. | **CASE NO.: 4:18-bk-03317-SHG**<br><br>**Chapter 11**<br><br>**RESPONSE TO MOTION TO AUTHORIZE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS**<br><br>SUBJECT PROPERTY: 826 S. Langley Avenue, Unit 102 Tucson, AZ 85710<br><br>HEARING:<br>Date: March 5, 2020<br>Time: 2:15 p.m.<br>Place: Courtroom 329 38 S. Scott Avenue, Tucson, AZ<br>Judge: Hon. Scott H. Gan |

TO:    UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR(S), AND ALL

        INTERESTED PARTIES

        U.S. Bank Trust National Association as Trustee of the Cabana Series IV Trust, its

successors and/or assignees, ("Creditor") in the above-entitled Bankruptcy proceeding, hereby

submits the following response to the motion for authority to sell the property generally described as

**826 S. Langley Avenue, Unit 102 Tucson, AZ 85710** ("Property") filed by Debtors.

///

## FACTS

Debtor filed the instant Chapter 13 Bankruptcy Petition on March 30, 2018.

Creditor holds the first lien on the Property evidenced by a promissory note which is secured by the Property pursuant to a deed of trust evidenced within proof of claim #21 filed in the instant bankruptcy case on June 7, 2018. Creditor is the current holder of the note and beneficiary of the deed of trust.

On August 26, 2019, an order approving stipulation regarding claim treatment was entered providing for treatment of Creditor's claim as secured at $75,000.00 and paid over a new 30 year term at 5.00% interest per annum plus escrow for taxes and insurance directly to Creditor. A true and correct copy of the stipulation and order approving is attached hereto as **Exhibit A**.

On February 4, 2020, Debtors filed their Motion to Authorize the Sale of Real Property Free and Clear of Liens, Claims, Encumbrances and Interests ("Motion"). However, the Motion does not identify any material terms related to the alleged sale of the Property. Instead, it appears the Debtors are requesting blanket approval to sell the Property free and clear of liens. However, there does not appear to be any actual pending purchase agreement in place.

## ARGUMENT

Section 363(b) of the Bankruptcy Code provides, in pertinent part: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…" 11 U.S.C. § 363(b)(1). However, section 363(f) prescribes the limited circumstances in which a sale of estate property can be made free and clear of interests in such property. I*n re Flyboy Aviation Properties, LLC*, 501 B.R. 828, 834 (Bankr. N.D. Ga. 2013). With respect to lienholders, the Bankruptcy Code allows a secured creditor to object to a sale free and clear unless that secured creditor's claim is paid in full. *In re Popp*, 323 B.R. 260, 265 (9th Cir. BAP 2005) (citing 11 U.S.C. § 363(f)(3)). Section 363(f) provides in pertinent part:

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Debtors are only entitled to relief under section 363(f)(3) if the final sale price of the Property is more than the aggregate amount of the liens on the Property. See 11 U.S.C. § 363(f)(3); *Clear Channel Outdoor, Inc. v. Knupfer* (In re PW, LLC), 391 B.R. 25, 33 (9th Cir. BAP 2008) (recognizing that a free and clear sale under section 363(f)(3) is only authorized if the sale price exceeds the aggregate value of all liens); See also *In re Wing*, 63 B.R. 83, 85 (Bankr. M.D. Fla. 1986) (in order for the court to authorize a sale free and clear of liens pursuant to § 363(f)(3), the purchase price must exceed the total value of all liens or claims against the property, not just the liens of the first priority lienholders).

In the present case, Debtors have yet to receive an offer to purchase the Property. Although not entirely clear, it appears the Debtors are requesting blanket approval to sell the Property free and clear of liens at some date in future without receiving offers. As a result, the Debtors' request to approval a sale under §363 is premature. Furthermore, without providing a purchase agreement that indicates the proposed sale price for the Property, it is not possible to determine whether the sale price greater than the aggregate "face value" of the liens. Additionally, Debtors Motion does not establish any proper ground under section 363(f) to allow the sale of the Property free and clear of Creditor's lien. Creditor has not consented to the sale as no purchase agreement appears to have been entered into, rending Creditor unable to review and consider the veracity of the proposed sale.

4:18-bk-03317-SHG
Response to Motion to Sell

1  Furthermore, Creditor has not consented to any short payoff. Creditor is entitled to and must receive

2  a full payoff pursuant to an updated payoff statement through any sale closing date.

3          Based upon the forgoing, Creditor respectfully requests that the motion to sell be denied.

4

5

6                                          GHIDOTTI | BERGER LLP

7

8  Dated:  February 19, 2020                By:     /s/ Michelle R. Ghidotti, Esq.

9                                          MICHELLE R. GHIDOTTI, SBN 027180
                                           Counsel for Creditor

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

Larry O. Folks, #012142
**FOLKS HESS KASS, PLLC**
1850 N. Central Avenue, Suite 1140
Phoenix, Arizona 85004
(602) 256-5906
folks@folkshesskass.com
*Attorneys for Nationstar Mortgage LLC*
*d/b/a Mr. Cooper*

# IN THE UNITED STATES BANKRUPTCY COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceeding |
| JAY D. SEXTON and RUBY L. SEXTON, | Case No. 4:18-bk-03317-SHG |
| Debtors. | **STIPULATION REGARDING CLAIM TREATMENT** |

Nationstar Mortgage LLC d/b/a Mr. Cooper, ("Lender") and Jay D. Sexton and Ruby L. Sexton, (the "Debtors") (collectively, the "Parties"), by and through their undersigned counsel, hereby enter into this Stipulation for Claim Treatment to agree upon the treatment of Lender's secured claim in this bankruptcy proceeding by stipulating and agreeing as follows:

## I. RECITALS AND DEFINITIONS

1. On March 30, 2018, (the "Petition Date"), the Debtors, individually filed a voluntary petition with this Court for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code located at 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code").

## DESCRIPTION OF LENDER'S PRE-PETITION LOAN TO THE DEBTORS AND THE COLLATERAL FOR THE LOAN

2. Prior to the Petition Date, the Debtor, Jay D. Sexton, as borrower, obtained a loan (the "Loan") from Lender's predecessor which was secured by a mortgage lien upon the Debtors' investment, real property located at 826 South Langley

Avenue, Unit 102, Tucson Arizona 85710 (the "Property"). A true and accurate copy of the Note is attached hereto as <u>Exhibit 1</u> and is herein incorporated by this reference.

3.    The Note is secured by a Deed of Trust dated and recorded April 28, 2006, with the Pima County Recorder at Docket 12793, Page 8529 (the "Deed of Trust") which evidences a valid, perfected lien upon the Property. A true and accurate copy of the Deed of Trust is attached hereto as <u>Exhibit 2</u> and is herein incorporated by this reference.

4.    Lender is the successor-in-interest to and assignee of First Mangus Financial Corporation, an Arizona corporation. Specifically, on January 26, 2018, Mortgage Electronic Registration Systems, Inc., as nominee for First Magnus Financial Corporation, an Arizona corporation, assigned the Note and Deed of Trust pursuant to certain documents including, without limitation, a Corporate Assignment of Deed of Trust which was recorded with the Pima County Recorder (the "Assignment"). A true and accurate copy of the Assignment is attached hereto as <u>Exhibit 3</u> and is herein incorporated by this reference.

5.    Lender is the current holder and owner of the Note, Deed of Trust and Assignment (collectively, the "Loan Documents").

6.    Prior to the Petition Date, the Loan was in payment default and the arrearage due was comprised of: (i) $3,789.17 of principal and interest; (ii) $702.02 of fees and costs; (iii) $60.14 of escrow deficiency; and (iv) $51.31 of projected escrow shortage for a total of $4,602.64 (the "Pre-Petition Arrearage").

7.    Subsequent to the instant bankruptcy, the Loan was in payment default for each and every payment since the Petition Date, more specifically, payments due beginning April 01, 2018, and the post-petition arrearage due was comprised of 15 payments at $592.63 each for a total of $8,889.45(the "Post-Petition Arrearage").

2

8. As of the March 26, 2019, the unpaid balance owing under the Note was comprised of: (i) $65,629.24 of unpaid principal; (ii) $7,453.04 of accrued and unpaid interest; (iii) $2,327.02 of fees and costs; and (iv) $605.06 of escrow deficiency for a total of $76,014.36 (the "Loan Balance"). A true and accurate copy of the Loan Balance due as of the Petition Date is attached hereto as Exhibit 4 and is herein incorporated by this reference.

## II. OPERATIVE PROVISIONS

9. The Parties hereby incorporate the foregoing *Recitals and Definitions* section of this Stipulation into this *Operative Provisions* section as though it is fully set forth herein.

10. The Parties acknowledge and agree that the Loan Documents, as assigned to Lender, are valid, enforceable, perfected and evidence Lender's lien upon the Property.

11. The Parties acknowledge and agree that Lender's secured claim evidenced by the Loan Documents is an allowed secured claim pursuant to 11 U.S.C. §§ 502(a) and 506(a).

12. The Parties acknowledge and agree that Lender was due $76,014.36 as evidenced by that certain Payoff Statement dated March 26, 2019.

13. Lender's claim is treated under Debtors' Plan as Class 6C Debtor to Strip Lien to Value of Collateral and Pay Over Time.

14. The Parties agree that as of the Petition Date, the value of the Property is $75,000.00.

15. The Parties agree that $75,000.00 shall be the allowed amount of Lender's secured claim as to the Property (the "Allowed Secured Claim")

3

16.     The Parties acknowledge and agree that Lender's Allowed Secured Claim shall be paid by Debtors, amortized over 30 years with interest at the rate of 5.00% per annum plus escrow for taxes and insurance, directly to Lender outside the Chapter 11 Plan with regular monthly payments commencing the 1st day of the month immediately following confirmation of Debtors' Chapter 11 Plan (each a "Loan Installment Payment").

17.     The Parties acknowledge and agree that Lender has and shall retain its valid, perfected lien upon the Property to secure its Allowed Secured Claim in this bankruptcy proceeding and pursuant to any Chapter 11 Plan confirmed in this bankruptcy proceeding.

18.     Debtors acknowledge and agree that the amount of Lender's Loan Balance in excess of its Allowed Secured Claim shall be paid in the same manner as all general unsecured claims under the Debtors' Chapter 11 Plan.

19.     Debtors agree to remit each Loan Installment Payment made payable to Nationstar Mortgage LLC d/b/a Mr. Cooper for Regular Payment Process directly to P.O. Box 619094, Dallas TX 75261-9741; or in the alternative, for Overnight/Express Payment, payable to Nationstar Mortgage LLC d/b/a Mr. Cooper, Attn: Payment Processing, 1010 W Mockingbird, Suite 100, Dallas TX 75247.

20.     The Parties agree that the terms of this Stipulation are hereby incorporated into the Debtors' current Chapter 11 Plan [ECF No. 133] and shall constitute the treatment of Lender's Allowed Secured Claim under: Class 6C of the Chapter 11 Plan titled Class 6 Debtor to Strip Lien to Value of Collateral and Pay Over Time (the "Class 6C Secured Claim"). In addition, the Parties agree that the terms of this Stipulation shall be incorporated into any future amended, or modified, Chapter 11 Plan, or any Order confirming any such Chapter 11 Plan, that may be filed in this bankruptcy proceeding.

4

Any inconsistency between the current Chapter 11 Plan, or any future Chapter 11 Plans that may be filed in this bankruptcy proceeding, and this Stipulation shall be resolved in favor of the Stipulation.

21.     The Parties acknowledge and agree that Debtors may prepay the Allowed Secured Claim without penalty at any time.

22.     The Parties acknowledge and agree that if any Loan Installment Payment required herein is not timely made, upon ten (10) days' written notice to Debtors' counsel, and to Debtors at 4207 East Skyline Drive, Tucson AZ 85716 or such other address as Debtors provide to Lender, Lender may certify the Debtors' noncompliance and lodge an order immediately lifting the bankruptcy automatic stay of 11 U.S.C. §362(a) for all purposes as to Lender, its assignees and/or successors in interest, and Lender, its assignees and/or successors in interest may proceed with their state law rights as to the Property including, without limitation, conducting a non-judicial trustee's foreclosure sale or judicial foreclosure of the Property.

23.     Debtors hereby waive any right to challenge the validity of Lender's lien on the Property, or to commence any preference, fraudulent transfer, or avoidance action of any kind against Lender.

24.     The provisions of this Stipulation shall be binding upon and inure to the benefit of Lender and Debtors and their respective successors and assigns including any trustee hereinafter appointed in the event of conversion of this bankruptcy case to Chapter 7 of the Bankruptcy Code.

25.     Nothing contained herein shall constitute a waiver or modification of the terms of Lender's loan documents except as expressly provided herein.

26.     Nothing herein shall prejudice, impair or otherwise affect the right of Lender, or its successors and assigns, at any time, to seek: (i) dismissal or conversion of

5

this bankruptcy proceeding; or (ii) any other appropriate relief available under the Bankruptcy Code.

27.     Except as otherwise expressly provide herein, this Stipulation shall not constitute a waiver of modification of any of the Parties' rights; nor shall it preclude the exercise of any right or remedy available to the Parties at law or in equity, including, without limitation, any procedure necessary or appropriate to enforce any of the provision of this Stipulation for the benefit of the Parties.

28.     Subject to the approval of this Stipulation by the Court, each of the Parties hereto represents and warrants that it has full power and authority to enter into this Stipulation.

29.     This Stipulation may not be modified, amended, altered or waived except in a writing signed by the parties hereto or their duly authorized agents.

30.     This Stipulation may be executed in any number of counterparts, each shall be deemed an original, but all counterparts taken together shall constitute one and the same instrument.

31.     The Bankruptcy Court shall retain jurisdiction to resolve all disputes concerning the interpretation and enforcement of this Stipulation.


Agreed as to form and content; and DATED this _____ day of JUNE 2019:


_____
JAY D. SEXTON

_____
RUBY L. SEXTON

/ / /

25.     Nothing contained herein shall constitute a waiver or modification of the terms of Lender's loan documents except as expressly provided herein.

26.     Nothing herein shall prejudice, impair or otherwise affect the right of Lender, or its successors and assigns, at any time, to seek: (i) dismissal or conversion of this bankruptcy proceeding; or (ii) any other appropriate relief available under the Bankruptcy Code.

27.     Except as otherwise expressly provide herein, this Stipulation shall not constitute a waiver of modification of any of the Parties' rights; nor shall it preclude the exercise of any right or remedy available to the Parties at law or in equity, including, without limitation, any procedure necessary or appropriate to enforce any of the provision of this Stipulation for the benefit of the Parties.

28.     Subject to the approval of this Stipulation by the Court, each of the Parties hereto represents and warrants that it has full power and authority to enter into this Stipulation.

29.     This Stipulation may not be modified, amended, altered or waived except in a writing signed by the parties hereto or their duly authorized agents.

30.     This Stipulation may be executed in any number of counterparts, each shall be deemed an original, but all counterparts taken together shall constitute one and the same instrument.

31.     The Bankruptcy Court shall retain jurisdiction to resolve all disputes concerning the interpretation and enforcement of this Stipulation.


Agreed as to form and content; and DATED this _____10_____ day of JUNE 2019:


_____
JAY D. SEXTON

6

_____
RUBY L. SEXTON

/ / /

DATED this _____ day of JUNE 2019.

FOLKS HESS KASS, PLLC

By _____
Larry O. Folks
1850 N. Central Avenue, Suite 1140
Phoenix, Arizona 85004
*Attorneys for Lender*

DATED this _____ day of JUNE 2019.

LAW OFFICES OF ERIC SLOCUM
SPARKS, P.C.

By _____
Eric Slocum Sparks
3505 N. Campbell Ave., Suite 501
Tucson, AZ 85719
*Attorney for Debtors*

**ORIGINAL** filed by ECF and
**COPIES** of the foregoing mailed
this _____ day of JUNE 2019, to:

Jay D. Sexton

7

DATED this 2nd day of JULY 2019.

**FOLKS HESS KASS, PLLC**

By   */s/ Larry O. Folks (#012142)*
    Larry O. Folks
    1850 N. Central Avenue, Suite 1140
    Phoenix, Arizona  85004
    *Attorneys for Lender*

DATED this _____ day of JUNE 2019.

**LAW OFFICES OF ERIC SLOCUM SPARKS, P.C.**

By _____
    Eric Slocum Sparks
    3505 N. Campbell Ave., Suite 501
    Tucson, AZ 85719
    *Attorney for Debtors*

**ORIGINAL** filed by **ECF** and
**COPIES** of the foregoing mailed
this 2nd day of JULY 2019, to:

Jay D. Sexton
Ruby L. Sexton
4207 East Skyline Drive
Tucson, AZ  85718
*Debtors*

Eric Slocum Sparks, Esq.
Eric Slocum Sparks PC
3505 North Campbell Ave. #501
Tucson, AZ  85719
Email:  law@ericslocumsparkspc.com
*Attorney for the Debtors*

All Creditors And Parties-In-Interest On
The Master Mailing Matrix (attached hereto)

7

US Trustee
Office of the US Trustee
230 North First Avenue
Suite 204
Phoenix, AZ 85003
*Attorney for the US Trustee*

By: /s/ Iesha Meza
*An employee of Folks Hess Kass, PLLC*

8

Case Number:    4:18-bk-03317-SHG

4:18-bk-03317-SHG|BBR INVESTMENTS LLC |100 NORTH CENTER STREET|NEWTON FALLS, OH 44444-1321||||
4:18-bk-03317-SHG|Bayview Loan Servicing, LLC | |||||undeliverable
4:18-bk-03317-SHG|Deutsche Bank Trust Company Americas, as Tru|c/o Aldridge Pite, LLP|4375 Jutland Drive, Suite 200|P.O. Box 17933|San Diego, CA 92177-7921||
4:18-bk-03317-SHG|Kinecta Federal Credit Union |1 Corporate Drive|Suite 360|Lake Zurich, IL 60047-8945|||
4:18-bk-03317-SHG|NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER |Robertson, Anschutz & Schneid, P.L.|6409 Congress Avenue Suite 100|Boca Raton, FL 33487-2853|||
4:18-bk-03317-SHG|New Penn Financial, LLC DBA Shellpoint Mortg|Wright, Finlay & Zak, LLP|c/o Joel F. Newell|16427 N. Scottsdale Road, Suite 300|Scottsdale, AZ 85254-1597||
4:18-bk-03317-SHG|New Penn Financial, LLC d/b/a Shellpoint Mor|P.O. Box 10826|Greenville, SC 29603-0826|||
4:18-bk-03317-SHG|Ocwen Loan Servicing, LLC | |||||undeliverable
4:18-bk-03317-SHG|PIMA COUNTY |C/O PIMA COUNTY ATTORNEY'S OFFICE|32 N. STONE AVE., STE. 2100|TUCSON, AZ 85701-1458|||
4:18-bk-03317-SHG|Shellpoint Mortgage Servicing |Wright, Finlay & Zak, LLP|c/o Joel F. Newell (SBN 025296)|2800 N. Central Avenue, Ste. 1200|Phoenix, AZ 85004-1009||
4:18-bk-03317-SHG|Toyota Lease Trust | |||||undeliverable
4:18-bk-03317-SHG|U.S. Bankruptcy Court, Arizona|38 S. Scott Avenue|Tucson, AZ 85701-1704| |||
4:18-bk-03317-SHG|ARIZONA DEPT OF REVENUE |1600 W. MONROE|7TH FLOOR|PHOENIX AZ 85007-2650| ||
4:18-bk-03317-SHG|BANK OF AMERICA |PO BOX 15796|Wilmington DE 19886-5796| |||
4:18-bk-03317-SHG|BBR INVESTMENTS LLC |100 NORTH CENTER STREET|NEWTON FALLS, OH 44444-1321| |||duplicate
4:18-bk-03317-SHG|Bank Of America |Nc4-105-03-14|Po Box 26012|Greensboro NC 27420-6012| ||
4:18-bk-03317-SHG|Bank of America, N.A. |P O Box 982284|El Paso, TX 79998-2284| |||
4:18-bk-03317-SHG|Bayview Loan Servicing, LLC |Leonard McDonald|Seventh Floor Camelback Esplanade II|2525 E. Camelback Rd, Phoenix, AZ 85016| ||
4:18-bk-03317-SHG|CHARTER COMMUNICATIONS |C/O EASC, INC|PO BOX 837|Newtown CT 06470-0837| ||
4:18-bk-03317-SHG|Capital One |Attn: Bankruptcy|Po Box 30253|Salt Lake City UT 84130-0253| ||
4:18-bk-03317-SHG|Capital One |Po Box 30285|Salt Lake City UT 84130-0285| |||
4:18-bk-03317-SHG|Capital One Bank (USA), N.A. |PO Box 71083|Charlotte, NC 28272-1083| |||
4:18-bk-03317-SHG|Central Credit Service |550 N Regency Square Blv|Jacksonville FL 32225| |||
4:18-bk-03317-SHG|Chase Card |Attn: Correspondence Dept|Po Box 15298|Wilmington DE 19850-5298| ||
4:18-bk-03317-SHG|Chase Mortgage |3415 Vision Dr|Columbus OH 43219-6009| |||
4:18-bk-03317-SHG|Chase Mtg |P.o. Box 24696|Columbus OH 43224-0696| |||
4:18-bk-03317-SHG|CitiMortgage, Inc. |P.O. Box 6030|Sioux Falls, SD 57117-6030| |||
4:18-bk-03317-SHG|Citibank North America |Citicorp Credit Srvs/Centralized Bankrup|Po Box 790040|Saint Louis MO 63179-0040| ||
4:18-bk-03317-SHG|Citibank/Sears |Citicorp Credit Services/Attn: Centraliz|Po Bopx 790040|Saint Louis MO 63179-0040| ||
4:18-bk-03317-SHG|Citibank/The Home Depot |Citicorp Cr Srvs/Centralized Bankruptcy|Po Box 790040|S Louis MO 63179-0040| ||
4:18-bk-03317-SHG|Citimortgage Inc |Attn: Bankruptcy|Po Box 6423|Sioux Falls SD 57117| ||
4:18-bk-03317-SHG|Comenity Capital/jjill |Comenity Bank|Po Box 182125|Columbus OH 43218-2125| ||
4:18-bk-03317-SHG|Deutsche Bank Trust Company Americas, |Ocwen Loan Servicing, LLC|Attn: Bankruptcy Department|PO Box 24605|West Palm Beach, FL 33416-4605| |
4:18-bk-03317-SHG|Ditech |Attn: Bankruptcy|Po Box 6172|Rapid City SD 57709-6172| ||
4:18-bk-03317-SHG|DITECH FINANCIAL LLC|2100 EAST ELLIOT|SUITE 94|TEMPE CA 85284-1806|||preferred

4:18-bk-03317-SHG|Dovenmuehle Mortgage, Inc. |1 Corporate Drive|Suite 360|Lake Zurich, Illinois 60047-8945| ||
4:18-bk-03317-SHG|Dsnb Bloomingdales |Attn: Bankruptcy|Po Box 8053|Mason OH 45040-8053| ||
4:18-bk-03317-SHG|E*Trade Bank |c/o Specialized Loan Servicing LLC|8742 Lucent Blvd, Suite 300|Highlands Ranch, Colorado 80129-2386| ||
4:18-bk-03317-SHG|US BANK|PO BOX 5229|CINCINNATI OH 45201-5229||||preferred
4:18-bk-03317-SHG|GENERAL PHYSICIAN, P.C. |3 ENTERPRISE DR., STE 404|Shelton CT 06484-4694| |||
4:18-bk-03317-SHG|Hughes Federal Cr Un |951 E Hermans Rd|Tucson AZ 85756-9000| |||
4:18-bk-03317-SHG|IRS - Philadelphia |PO BOX 7346|PHILADELPHIA PA 19101-7346| |||
4:18-bk-03317-SHG|IRS - Phoenix |4041 N. CENTRAL AVE.|SUITE 112|PHOENIX AZ 85012-5000| ||
4:18-bk-03317-SHG|KALEIDA HEALTH |PO BOX 4551|Buffalo NY 14240-4551| |||
4:18-bk-03317-SHG|Kinecta Fcu/dovenmuehl |1 Corporate Dr Ste 360|Lake Zurich IL 60047-8945| |||
4:18-bk-03317-SHG|LOUIS A. BANKS & EDDICE CORNELIUS |10301 N HACIENDA HERMOSA DR.|Tucson AZ 85737-3668| |||
4:18-bk-03317-SHG|Louis A. Banks and Eddice Cornelius |C/o Jody A. Corrales, Esq.|DeConcini McDonald Yetwin & Lacy, P.C.|2525 E. Broadway Blvd., Suite 200|Tucson, AZ 85716-5300| |
4:18-bk-03317-SHG|NATIONAL FUEL GAS DISTRIBUTION CORPORATION |6363 MAIN STREET|WILLIAMSVILLE NY 14221-5887| |||
4:18-bk-03317-SHG|NATIONAL GRID |PO BOX 9035|Addison TX 75001-9035| |||
4:18-bk-03317-SHG|NBT BANK NA|52 SOUTH BROAD STREET|NORWICH NY 13815-1699||||preferred
4:18-bk-03317-SHG|NORTHWEST ALLIED PHYSICIANS LLC C/O PASI |PO BOX 188|BRENTWOOD, TN 37024-0188| |||
4:18-bk-03317-SHG|NORTHWEST CARDIOLOGY LLC C/O PASI |PO BOX 188|BRENTWOOD, TN 37024-0188| |||
4:18-bk-03317-SHG|Nationstar Mortgage LLC |Attn: Bankruptcy|8950 Cypress Waters Blvd|Coppell TX 75019-4620| ||
4:18-bk-03317-SHG|Nationstar Mortgage LLC d/b/a Mr. Cooper |ATTN: Bankruptcy Dept.|PO Box 619096|Dallas TX 75261-9096| ||
4:18-bk-03317-SHG|Navient |Attn: Bankruptcy|Po Box 9500|Wilkes-Barr PA 18773-9500| ||
4:18-bk-03317-SHG|Navient Solutions, LLC |220 Lasley Ave|Wilkes-Barre, PA 18706-1430| |||
4:18-bk-03317-SHG|Navient Solutions, LLC. |220 Lasley Ave|Wilkes-Barre, PA 18706-1430| |||duplicate
4:18-bk-03317-SHG|New Penn Financial, LLC d/b/a Shellpoint Mor|P.O. Box 10826|Greenville, SC 29603-0826| |||duplicate
4:18-bk-03317-SHG|OCWEN LOAN SERVICING |PO BOX 6723|Springfield OH 45501-6723| |||
4:18-bk-03317-SHG|Ocwen Loan Servicing, LLC |Attn: Bankruptcy Department|PO Box 24605|West Palm Beach, FL 33416-4605| ||
4:18-bk-03317-SHG|Ocwen Loan Servicing, LLC |c/o ALDRIDGE PITE, LLP|4375 Jutland Drive, Suite 200|P.O. Box 17933|San Diego, CA 92177-7921| |
4:18-bk-03317-SHG|Ocwen Loan Servicing, Llc |Attn: Research/Bankruptcy|1661 Worthington Rd Ste 100|West Palm Bch FL 33409-6493| ||
4:18-bk-03317-SHG|Pima County, Arizona |c/o Pima County Attorney's Office-C|32 North Stone Avenue, Suite 2100|Tucson, Arizona 85701-1458| ||
4:18-bk-03317-SHG|Quantum3 Group LLC as agent for |Comenity Capital Bank|PO Box 788|Kirkland, WA 98083-0788| ||
4:18-bk-03317-SHG|ROBERT AND ESTHER BECK |5071 E CALLE BRILLANTE|TUCSON AZ 85718-1820| |||
4:18-bk-03317-SHG|ROBERT E. & ESTHER L. BECK |REVOCABLE FAMILY TRUST|5071 E. CALLE BRILLANTE|Tucson AZ 85718-1820| ||
4:18-bk-03317-SHG|SOUTHERN ARIZONA ANESTHESIA SERVICES |3390 N CAMPBELL AVE SUITE 110|Tucson AZ 85719-2380| |||
4:18-bk-03317-SHG|Shapiro, Van Ess and Sherman, LLP |3636 N. Central Avenue|Suite 400|Phoenix, AZ 85012-1932| ||
4:18-bk-03317-SHG|Specialized Loan Servicing/SLS |Attn: Bankruptcy|Po Box 636005|Littleton CO 80163-6005| ||

4:18-bk-03317-SHG|Syncb/care Credit |Attn: Bankruptcy|Po Box 965060|Orlando FL 32896-5060| ||
4:18-bk-03317-SHG|Synchrony Bank/ JC Penneys |Attn: Bankruptcy|Po Box 965060|Orlando FL 32896-5060| ||
4:18-bk-03317-SHG|Synchrony Bank/Lowes |Attn: Bankruptcy|Po Box 965060|Orlando FL 32896-5060| ||
4:18-bk-03317-SHG|Synchrony Bank/Mervyns |Attn: Bankruptcy|Po Box 965060|Orlando FL 32896-5060| ||
4:18-bk-03317-SHG|THE HATFORD |PO BOX 660916|Dallas TX 75266-0916| |||
4:18-bk-03317-SHG|TOYOTA LEASE TRUST |C/O BECKET AND LEE LLP|PO BOX 3001|MALVERN PA 19355-0701| ||
4:18-bk-03317-SHG|TRULY NOLEN OF AMERICA, INC. |C/O A.R.M. SOLUTIONS, INC|PO BOX 3666|Camarillo CA 93011-3666| ||
4:18-bk-03317-SHG|Toyota Lease Trust |Leonard McDonald|Seventh Floor Camelback Esplanade II|2525 E. Camelback Rd, Phoenix, AZ 85016| ||
4:18-bk-03317-SHG|Toyota Lease Trust |c/o Toyota Motor Credit Corporation|PO Box 9013|Addison, Texas 75001-9013| ||
4:18-bk-03317-SHG|TOYOTA MOTOR CREDIT CORPORATION|PO BOX 8026|CEDAR RAPIDS IA 52408-8026||||preferred
4:18-bk-03317-SHG|U.S. Bank NA dba Elan Financial Services |Bankruptcy Department|PO Box 108|St. Louis MO 63166-0108| ||
4:18-bk-03317-SHG|U.S. TRUSTEE |OFFICE OF THE U.S. TRUSTEE|230 NORTH FIRST AVENUE|SUITE 204|PHOENIX, AZ 85003-1725| |
4:18-bk-03317-SHG|US DEPT OF EDUCATION |CLAIMS FILING UNIT|PO BOX 8973|MADISON, WI 53708-8973| ||
4:18-bk-03317-SHG|Us Dept Of Ed/Great Lakes Higher Educati |Attn: Bankruptcy|2401 International Lane|Madison WI 53704-3121| ||
4:18-bk-03317-SHG|Visa Dept Store National Bank/Macy's |Attn: Bankruptcy|Po Box 8053|Mason OH 45040-8053| ||
4:18-bk-03317-SHG|WELLS FARGO BANK SMALL BUSINESS LENDING DIVI|P.O. Box 29482|Phoenix, AZ 85038-8650|Telephone number: (888) 715-4315|SBLBKInquiry@wellsfargo.com 85038-9482| |
4:18-bk-03317-SHG|Wells Fargo Bank |Po Box 10438|Macf8235-02f|Des Moines IA 50306-0438| ||
4:18-bk-03317-SHG|Wells Fargo Bank, N.A., Wells Fargo Card Ser|PO Box 10438, MAC F8235-02F|Des Moines, IA 50306-0438| |||
4:18-bk-03317-SHG|Wellsfargo |Attn: Bankruptcy|Po Box 9210|Des Moines IA 50306-9210| ||
4:18-bk-03317-SHG|EDDICE M CORNELIUS |10301 N HACIENDA HERMOSA DR|TUCSON, AZ 85737-3668||||
4:18-bk-03317-SHG|ERIC SLOCUM SPARKS |ERIC SLOCUM SPARKS PC|3505 N CAMPBELL AVE #501|TUCSON, AZ 85719-2033|||
4:18-bk-03317-SHG|JAY D SEXTON |4207 E SKYLINE DR|TUCSON, AZ 85718-2536||||
4:18-bk-03317-SHG|LOUIS BANKS |10301 N. HACIENDA HERMOSA DR.|TUCSON, AZ 85737-3668||||
4:18-bk-03317-SHG|RUBY L SEXTON |4207 E SKYLINE DR|TUCSON, AZ 85718-2536||||

Total Labels 93

# EXHIBIT "1"

# Confirmed Original Note



Confirmed Note by: *Sharon Berry*

*Sharon Berry*



MIN [REDACTED]
MERS Phone: 1-888-679-6377

# NOTE

LOAN NO.: [REDACTED]

APRIL 28, 2008
[Date]

TUCSON
[City]

ARIZONA
[State]

826 South Langley Avenue Unit 102, TUCSON, AZ 85710
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    82,400.00    (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is

FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of    6.875   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st    day of each month beginning on    JUNE, 2008    . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on    MAY 01, 2036    , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
603 NORTH WILMOT ROAD, TUCSON, AZ 85711    or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    541.31    .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

Initials: [initials]

Form 3200 1/01



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000          % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



Initials:

VMP-5N (0207)                                      Page 2 of 3                                      Form 3200 1/01

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
JAY D. SEXTON                    -Borrower                                     -Borrower

_____ (Seal)      _____ (Seal)
                                 -Borrower                                     -Borrower

_____ (Seal)      _____ (Seal)
                                 -Borrower                                     -Borrower

_____ (Seal)      Pay to the order of _____ (Seal)
                                 -Borrower                                     -Borrower

without recourse on us CitiMortgage, Inc.

_____
Janet L. Sims, Vice President
CitiMortgage, Inc.

VMP-5N (0207)                    Page 3 of 3                    Form 3200 1/01

WITHOUT RECOURSE,
PAY TO THE ORDER OF
    "CitiMortgage, Inc."
FIRST MAGNUS FINANCIAL CORPORATION
an Arizona Corporation
BY: _____
    Elec . Carter, Closer/Funder

# EXHIBIT "2"

F. ANN RODRIGUEZ, RECORDER
RECORDED BY: HEM
    DEPUTY RECORDER
    2057   ES4

TFNTI
FIRST MAGNUS FINANCIAL CORP
603 N WILMOT
TUCSON AZ 85711



| DOCKET: | 12793 |
| PAGE: | 8529 |
| NO. OF PAGES: | 19 |
| SEQUENCE: | |
| | 04/28/2006 |
| DOT | 17:30 |
| MAIL | |
| AMOUNT PAID | $ 24.00 |

Recording Requested By:
FIRST MAGNUS FINANCIAL CORPORATION

Return To:
FIRST MAGNUS FINANCIAL CORPORATION

603 N. WILMOT
TUCSON, AZ 85711

Prepared By:

FIRST MAGNUS FINANCIAL CORPORATION
603 N. WILMOT
TUCSON, AZ 85711



RECEIVED
MAY 2 3 2006

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

LOAN NO.:
ESCROW NO.:

MIN
MERS Phone:

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated     APRIL 28, 2006
together with all Riders to this document.
(B) "Borrower" is
JAY D. SEXTON AN UNMARRIED MAN

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
826 South Langley Avenue Unit 102, TUCSON, AZ 85710
(C) "Lender" is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

Lender is a  CORPORATION
organized and existing under the laws of  ARIZONA

Initials:

ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS  Form 3003  1/01 (rev. 6/02)
VMP-6A(AZ) (0200)              Page 1 of 18      LENDER SUPPORT SYSTEMS INC. MERS6AAZ.NEW (05/04)



Lender's mailing address is
603 NORTH WILMOT ROAD, TUCSON, AZ 85711
(D) "Trustee" is
FIDELITY NATIONAL TITLE
Trustee's mailing address is
7750 EAST BROADWAY BLVD, SUITE 400, TUCSON, AZ 85710
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated       APRIL 28, 2006
The Note states that Borrower owes Lender
EIGHTY TWO THOUSAND FOUR HUNDRED AND NO/100 X X X X X X X X X X X X X X X

                                                                         Dollars

(U.S. $ 82,400.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than       MAY 01, 2036
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [ ] Adjustable Rate Rider | [XX] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                     of                     PIMA                     :
[Type of Recording Jurisdiction]                     [Name of Recording Jurisdiction]

APARTMENT 89 IN UNIT 9, OF LANGLEY GARDENS CONDOMINIUMS, A RESUBDIVSION, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER, PIMA COUNTY, ARIZONA, IN BOOK 29 OF MAPS AT PAGE 11 THEREOF, TOGETHER WITH AN UNDIVIDED INTEREST IN THE COMMONAREA.

Parcel ID Number: ▓▓▓▓▓▓▓                                which currently has the address of
828 South Langley Avenue Unit 102                                [Street]
TUCSON                     [City] , Arizona     85710     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Initials: ▓▓

VMP-6A(AZ) (0209)                     Page 3 of 15                     Form 3003  1/01 (rev. 6/02)

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: DS

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: [initials]

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Case 4:18-bk-03317-SHG   Doc 2729   Filed 02/07/21   Entered 02/07/21 17:39:28   Desc
Main Document   Page 31 of 53

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Case 4:18-bk-03371-SHG  Doc 279  Filed 02/19/21  Entered 02/19/21 17:39:26  Desc
Main Document  Page 32 of 53

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initial: DS

VMP-6A(AZ) (0208)                     Page 8 of 15                     Form 3003  1/01  (rev. 6/02)

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: [handwritten]

VMP-6A(AZ) (0208)                    Page 9 of 15                    Form 3003  1/01 (rev. 6/02)

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Case 4:18-bk-08371-BSG  Doc 27  Filed 02/19/20  Entered 02/19/20 17:38:43  Desc
Main Document    Page 35 of 53

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: [initials]

Case 4:18-bk-09331-SHG Doc 279 Filed 02/19/21 Entered 02/19/21 17:39:16 Desc
Main Document Part 4 Page 36 of 53

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: ___

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Time of Essence. Time is of the essence in each covenant of this Security Instrument.


Case 4:18-bk-08331-SHG  Doc 279-9  Filed 02/19/21  Entered 02/19/21 17:39:26  Desc
Main Document - 4  Page 38 of 53

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____
-Witness

_____
-Witness

_____ (Seal)         _____ (Seal)
JAY D. SEXTON                -Borrower                                         -Borrower

_____ (Seal)         _____ (Seal)
                            -Borrower                                         -Borrower

_____ (Seal)         _____ (Seal)
                            -Borrower                                         -Borrower

_____ (Seal)         _____ (Seal)
                            -Borrower                                         -Borrower

STATE OF ARIZONA , County ss:

The foregoing instrument was acknowledged before me this ██████ by
JAY D. SEXTON

My Commission Expires: 11-19-09

OFFICIAL SEAL
TRACI M. TOMLINSON
NOTARY PUBLIC - STATE OF ARIZONA
PIMA COUNTY
My Comm. Expires Nov. 19, 2009

Notary Public

# EXHIBIT "ONE"

Apartment 89 in Unit 9, of LANGLEY GARDENS CONDOMINIUMS, a Resubdivision, according to the plat of record in the office of the County Recorder, Pima County, Arizona, in Book 29 of Maps at page 11 thereof.

TOGETHER WITH an undivided interest in the Common Area.

# CONDOMINIUM RIDER

LOAN NO.: ▪▪▪▪▪▪▪▪▪▪▪▪▪

MIN: ▪▪▪▪▪▪▪▪▪
MERS Phone: 1-888-679-6377

THIS CONDOMINIUM RIDER is made this 28th day of APRIL, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
826 South Langley Avenue Unit 102, TUCSON, AZ 85710
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:
LANGLEY GARDENS
[Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family -
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
V-8R (0411)　　　　　　　　　　Page 1 of 3

Initials: ▪▪

Form 3140 1/01
LENDER SUPPORT SYSTEMS INC. 8R-NEW (03/05)

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

V-8R (0411)                    Page 2 of 3                    Form 3140 1/01

Case 4:18-b-03837-SHG Doc 279-1 Filed 02/10/21 Entered 02/10/21 17:31:28 Desc Main Document - 4 Page 43 of 53

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)       _____ (Seal)
JAY D. SEXTON          -Borrower                              -Borrower

_____ (Seal)       _____ (Seal)
                       -Borrower                              -Borrower

_____ (Seal)       _____ (Seal)
                       -Borrower                              -Borrower

_____ (Seal)       _____ (Seal)
                       -Borrower                              -Borrower

V-8R (0411)                    Page 3 of 3                    Form 3140 1/01

# EXHIBIT "3"

```
SEQUENCE:
No. Pages:        2
2/1/2018      3:35 PM

F. ANN RODRIGUEZ, RECORDER
Recorded By: JSH(e-recording)
```

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Pima, Arizona
"SEXTON"

MIN #: _____       SIS #: _____

Date of Assignment: January 26th, 2018
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA
CORPORATION, ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI
48501-2026
Assignee: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD,
COPPELL, TX 75019

Executed By: JAY D. SEXTON AN UNMARRIED MAN To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST MAGNUS
FINANCIAL CORPORATION, AN ARIZONA CORPORATION
Date of Deed of Trust: 04/28/2006 Recorded: 04/28/2006 in Book/Reel/Liber: 12793
Page/Folio: 8529 as Instrument No. _____ in the County of Pima, State of
Arizona.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration,
the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby
assigns unto the above-named Assignee, the said Deed of Trust having an original
principal sum of $82,400.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor
hereby grants and conveys unto the said Assignee, the Assignor's interest under the
Deed of Trust.

    TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the
said Assignee forever, subject to the terms contained in said Deed of Trust. IN
WITNESS WHEREOF, the assignor has executed these presents the day and year first
above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION, ITS
SUCCESSORS AND ASSIGNS
On January 26th, 2018

By: _____
TSEDALE ALEMU,
Vice-President

"CTA*CTANA11*01/26/2018 11.13 03 AM* NAT1D1NATYA0000000XXXX00012561D4* AJFIMA*_____AZSTATE_TRUST_ASSIGN_ASSN "DVCMATT*

STATE OF Texas
COUNTY OF Dallas

On January 26th, 2018, before me, DANIELA HORVATH, a Notary Public in and for
Dallas in the State of Texas, personally appeared TSEDALE ALEMU, Vice-President,
personally known to me (or proved to me on the basis of satisfactory evidence) to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

DANIELA HORVATH
Notary Expires: 01/27/2020  #███████

DANIELA HORVATH
Notary Public, State of Texas
Comm. Expires 01-27-2020
Notary ID ███████

(This area for notarial seal)

# EXHIBIT "4"

Case 4:18-bk-03831-SHG Doc 27279-ile Filed 02/07/21 Entered 02/07/21 17:39:28 Desc
Main Document - 4 Page 48 of 531

# Motion For Relief Information

## Loan Demographics

| Account Number | | Case Number | Property Address |
|---|---|---|---|
| | | 18-03317 | SOUTH LANGLEY AVENUE UNIT 102, TUCSON, AZ 85710 |

## Bankruptcy Filing Information

| | | Chapter Filed | | Chapter 11 | | Gov't Loan | No |
|---|---|---|---|---|---|---|---|
| BK Filer | JAY D SEXTON | | | | | | |
| | RUBY L SEXTON | Bankruptcy Filing Date | 03/30/18 | | | POC Filing Date | 06/07/18 |
| District | District of Arizona (Tucson) | | | | | 1st Post Due Date | |
| Beneficiary (Action in the Name of) | | | Nationstar Mortgage LLC d/b/a Mr. Cooper | | | | |

| | First Borrower | | | | Non-Filing Co-Signer | |
|---|---|---|---|---|---|---|
| Name | JAY D SEXTON | | SSN | | | |

| | Second Borrower | | | | Non-Filing Co-Signer | |
|---|---|---|---|---|---|---|
| Name | | | SSN | | | |

## Payoff Figures Through: 08/26/19

## Delinquent Contractual Payments

| | Unpaid Balance | Due Date | Total Pmt Amount (P&I + Escrow) | Principal & Interest | Escrow | Number of Months | Total Amount Due |
|---|---|---|---|---|---|---|---|
| Unpaid Balance | $65,029.24 | | | | | | |
| Interest Amount | $7,453.04 | 09/01/17-01/01/18 | $590.86 | $541.31 | $49.55 | 5 | $2,954.30 |
| Interest Rate | 6.875% | 02/01/18-03/01/18 | $594.10 | $541.31 | $52.79 | 2 | $1,188.20 |
| Per Diem | $12.36 | 04/01/18-02/01/19 | $592.63 | $541.31 | $51.32 | 11 | $6,518.93 |
| Escrow Advance | $605.06 | | $0.00 | $0.00 | $0.00 | | $0.00 |
| Corporate Advance | $2,327.02 | | $0.00 | $0.00 | $0.00 | | $0.00 |
| County Recording Fee | $10.00 | | $0.00 | $0.00 | $0.00 | | $0.00 |
| Total Suspense** | | Suspense** | $0.00 | | | | $0.00 |
| TOTAL | $0.00 | TOTAL | $0.00 | | | | $10,661.43 |

*Includes all Pre-Petition and Post – Petition Suspense*

**"P Chapter 7, will include all suspense**

## Payoff Figures Through:

| MFR Due Date / Payment Amount | | |
|---|---|---|
| Contractual Due Date as per LSAMS | 09/01/17 | *Please include right to Foreclose language in the Motion for Relief: All Motions for Relief from Stay shall include a statement |
| Contractual Payment Amount Due (P&I and Escrow) | $590.86 | that sets forth the basis for asserting that the applicable party has the right to foreclose. |

| Payment Address: | Correspondence Address: |
|---|---|
| Nationstar Mortgage LLC d/b/a Mr. Cooper | Nationstar Mortgage LLC d/b/a Mr. Cooper |
| Attn: Bankruptcy Dept | Attn: Bankruptcy Dept |
| P.O. Box 619094 | P.O. Box 619096 |
| Dallas, TX 75261-9741 | Dallas, TX 75261-9741 |

# IN THE UNITED STATES BANKRUPTCY COURT
## IN AND FOR THE DISTRICT OF ARIZONA

In Re:

JAY D. SEXTON and RUBY L. SEXTON,

        Debtor.

Chapter 11 Proceeding

Case No. 4:18-bk-03317-SHG

**ORDER APPROVING STIPULATION REGARDING CLAIM TREATMENT**

**[Relates to Docket Entry Nos. 179, 180 AND 181]**

This matter having come before the Court pursuant to a <u>Stipulation Regarding Claim Treatment</u> [Docket Entry No. 179] (the "Claims Treatment Stipulation") by and between Nationstar Mortgage LLC d/b/a Mr. Cooper. ("MR COOPER") and JAY D. SEXTON and RUBY L. SEXTON, the debtor(s) (the "Debtors") and a 21-day negative notice which sought approval of the Claims Treatment Stipulation [Docket Entry No. 180], there having been proper 21-days' notice given of the Claims Treatment Stipulation as evidenced by a certain Certificate of Mailing [Docket Entry No. 181], no objections to approval of the Claims Treatment Stipulation having been filed and other good cause appearing therefor,

        **IT IS HEREBY, ORDERED, ADJUDGED AND DECREED** as follows:

A.    The terms and conditions of the Claims Treatment Stipulation between Mr Cooper and the Debtor filed at Docket Entry No. 179 are hereby approved in full; and

B.    That the Debtor shall include all terms and conditions of the Claims

1  Treatment Stipulation in its pending First Plan Of Reorganization Dated
2  February 25, 2019, or any other Chapter 11 plan of reorganization, that
3  may filed by the Debtor in this bankruptcy proceeding and such terms shall
4  be binding upon the parties upon confirmation of any such plan.
5  **Signed and dated above.**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michelle R. Ghidotti-Gonsalves, AZ State Bar No. 27180
GHIDOTTI | BERGER LLP
1920 Old Tustin Avenue
Santa Ana, CA 92705
Phone: 949-427-2010
Facsimile: 949-427-2732
Email: mghidotti@ghidottiberger.com


Attorneys for Credit
U.S. Bank Trust National Association as Trustee of the Cabana Series IV Trust

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA – TUCSON DIVISION**

| | |
|---|---|
| In re: | Case No: 4:18-bk-03317-SHG |
| JAY D SEXTON, RUBY L SEXTON, | Chapter 11 |
| Debtors. | CERTIFICATE OF SERVICE |

**<u>CERTIFICATE OF SERVICE</u>**

I am employed in the County of Orange, State of California. I am over the age of eighteen and not a party to the within action. My business address is: 5120 E. La Palma Ave., Ste. 206, Anaheim, CA 92807.

I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

On February 19, 2020, I served the following documents as described as:

1. **RESPONSE TO MOTION TO AUTHORIZE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS**

on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows.

**DEBTORS**
JAY D SEXTON
4207 E SKYLINE DR
TUCSON, AZ 85718

**JOINT DEBTOR**
RUBY L SEXTON
4207 E SKYLINE DR
TUCSON, AZ 85718

**DEBTOR'S COUNSEL**
JOHN C SMITH
c/o Smith and Smith PLLC
6720 E. Camino Principal #203
TUCSON, AZ 85715

**DEBTOR'S COUNSEL**
ERIC SLOCUM SPARKS
ERIC SLOCUM SPARKS PC
3505 N CAMPBELL AVE #504
TUCSON, AZ 85719

**DEBTOR'S COUNSEL**
ERIC 1 SPARKS
ERIC SLOCUM SPARKS PC
110 S CHURCH AVE #2270
TUCSON, AZ 85701

**U.S. TRUSTEE**
U.S. TRUSTEE
OFFICE OF THE U.S. TRUSTEE
230 NORTH FIRST AVENUE
SUITE 204
PHOENIX, AZ 85003

**U.S. TRUSTEE'S COUNSEL**
RENEE SANDLER SHAMBLIN
OFFICE OF THE U.S. TRUSTEE
230 North First Avenue, Suite 204
PHOENIX, AZ 85003-1706

  XX  (By First Class Mail) At my business address, I placed such envelope for deposit with the United States Postal Service by placing them for collection and mailing on that date following ordinary business practices.

  XX  (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 19, 2020, at Santa Ana, California

By: /s/Jeremy Romero
       Jeremy Romero